IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALYSSA BISTLINE; RUBY JESSOP; SUSAN BROADBENT; GINA ROHBOCK; NOLAN BARLOW; JASON BLACK; MAY MUSSER; HOLLY BISTLINE; T.B.; M.B.; P. B.; A.B.; A.B.; DERRELL BARLOW; ALICIA ROHBOCK; R.R.; R.R.; B.J.R.; WALLACE JEFFS; LAWRENCE BARLOW; STEVEN DOCKSTADER; MARVIN COOKE; HELEN BARLOW; VERGEL BARLOW; CAROLE JESSOP; BRIELL LIBERTAE DECKER; LYNETTE WARNER; AMY NIELSON; SARAH ALLRED; THOMAS JEFFS; and JANETTA JESSOP, <br><br>               Plaintiffs, <br><br> v. <br><br> WARREN STEED JEFFS; RODNEY R. PARKER; SNOW CHRISTENSEN & MARTINEAU, P.C.; and JOHN DOES 1 THROUGH X, <br><br>               Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' SNOW CHRISTENSEN & MARTINEAU, P.C. AND RODNEY R. PARKER'S MOTION TO DISMISS <br><br><br> Case No. 2:16-CV-788 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendants Snow Christensen & Martineau, P.C. ("SC&M") and Rodney R. Parker's (collectively, "Defendants") Motion to Dismiss. For the reasons set forth below, the Court will dismiss Plaintiffs' legal malpractice, breach of fiduciary duty, fraud, negligent misrepresentation, civil conspiracy, and civil RICO claims as barred by the relevant statutes of limitation, with the exception of the claims brought by Plaintiff May Musser, for whom the limitations period was tolled. The Court will dismiss Plaintiff May Musser's claims as inadequately pleaded. The Court will also dismiss Plaintiffs' claim under the

Trafficking Victims Protections Reauthorization Act ("TVPRA") as inadequately pleaded, and will dismiss Plaintiffs' aiding and abetting claim as stipulated by Plaintiffs.

## I.   INTRODUCTION

Plaintiffs are all former members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS Church"), and have brought the following claims against Warren Steed Jeffs, Rodney R. Parker, and SC&M: (1) legal malpractice, (2) breach of fiduciary duty, (3) fraud, (4) negligent misrepresentation, (5) civil conspiracy, (6) violation of the TVPRA, (7) aiding and abetting commission of felonies, and (8) civil RICO.  Defendant Jeffs has failed to respond and a Default Certificate has been entered against him.

Plaintiffs allege that when Defendant Jeffs began to assume the responsibilities of President of the FLDS Church, he retained SC&M to develop an "overarching scheme and plan . . . to develop the legal framework within which Jeffs and his favored cohorts would possess means to enforce their lewd, sadistic, tortious and criminal wishes upon the FLDS people."[1]  These wishes allegedly included ritual rape of minors, forced labor, extortionate taking of property and disintegration of family units.[2]  Plaintiffs allege that Defendants' legal framework took the shape of a 1998 amendment and reinstatement of the United Effort Plan Trust ("the Trust"), which purportedly gave Jeffs the ability to unilaterally reorganize the FLDS structure and control the distribution of assets, property, funds and real estate used for residential and business purposes by FLDS beneficiaries.[3]

---

[1] Docket No. 2 ¶ 16.

[2] *Id.*

[3] *Id.* ¶¶ 24, 27.

The amended and reinstated Trust provides that "[t]he doctrines and laws of the Priesthood and the Church are found in . . . revelations received through the [Prophet] and are the guiding tenets by which the trustees of the United Effort Plan Trust shall act."[4]  Plaintiffs allege that Jeffs used the powers given him in this provision as leverage to extort complete obedience, to create a culture that would tolerate his crimes, and to force FLDS members to pay large sums of personal wealth to Defendants for legal fees.  Plaintiffs allege that Defendants knew of Jeffs' plans and actions, wanted to bring them about, and participated in bringing them about by assisting to amend and reinstate the Trust, representing certain FLDS members but not others, and by creating an illusion of legality that helped Jeffs control the FLDS community.

Plaintiffs' 120-page Complaint details the purported losses of each Plaintiff.  Many Plaintiffs recount harrowing experiences and claim long-lasting emotional or physical harms resulting from an alleged lack of education, malnutrition, non-consensual sexual encounters, or periods of exile from family members.  Many of Plaintiffs' allegations are directed at Defendant Jeffs.  While sympathetic to Plaintiffs' claims, the allegations against Defendant Jeffs are not at issue on this Motion, and the Court may only consider the allegations against Defendants Parker and SC&M.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

---

[4] Docket No. 2, ¶ 28.

the nonmoving party.[5]  Plaintiffs must provide "enough facts to state a claim to relief that is

plausible on its face,"[6] which requires "more than an unadorned, the-defendant-unlawfully

harmed-me accusation."[7]  "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[8]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."[9]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to
> dismiss.  Determining whether a complaint states a plausible claim for relief
> will  . . . be a context-specific task that requires the reviewing court to draw on
> its judicial experience and common sense.  But where the well-pleaded facts
> do not permit the court to infer more than the mere possibility of misconduct,
> the complaint has alleged—but it has not shown—that the pleader is entitled
> to relief.[10]

### III. DISCUSSION

## A.  STATUTE OF LIMITATIONS

Plaintiffs' claims center on Defendants' role in the amendment and reinstatement of

the Trust in 1998.  Defendants' involvement with the Trust ended in 2005, when a Utah court

reformed the Trust and appointed a fiduciary.  However, Plaintiffs allege that Defendants

---

[5] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[9] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

continued to enable Jeffs' unlawful behaviors by advising Jeffs and by representing FLDS members in custody disputes and criminal matters.  Defendants argue that Plaintiffs' claims are time-barred with the exception of Plaintiffs' cause of action under the TVPRA.

      *1.  Legal Malpractice and Breach of Fiduciary Duty*

      Plaintiffs' claims of legal malpractice and breach of fiduciary duty are subject to a four-year statute of limitations.[11]  Plaintiffs allege that Defendants formed a relationship of trust with Plaintiffs and that Plaintiffs believed Defendants were protecting their interests.  Plaintiffs claim that Defendants' nurtured that belief by representing to courts that individual members of the FLDS community were their clients.  Plaintiffs allegedly contributed money to the FLDS Church with the understanding that some or all of it would be used to pay attorney's fees.  Plaintiffs claim that Defendants received Plaintiffs' money but took actions that were adverse to Plaintiffs' interests.  Plaintiffs' primary criticism of Defendants' conduct is that Defendants assisted Defendant Jeffs' father in the amendment and reinstatement of the Trust nearly twenty years ago.  Plaintiffs allege that the amendment was intended to enable Jeffs to abuse the FLDS community.  Plaintiffs also allege that Defendants failed to disclose the nature of Jeffs' activities and convictions, and failed to disclose his admission to an FLDS member that he was not the Prophet—an admission that Jeffs later withdrew.

      The Court finds that Plaintiffs' breach of fiduciary duty and malpractice claims are time-barred.  As a general rule, "a statute of limitations begins to run upon the happening of the last

---

[11] Utah Code. Ann. § 78B-2-307(3).

event necessary to complete the cause of action."[12]   Taking Plaintiffs' allegations as true, the

relevant events occurred long before July, 2012.  The Trust was amended in 1998.  The

collection of donations from members for attorney's fees began at least as early as 2001.[13]

Defendants allegedly held themselves out as representing individual FLDS members in 2008 and

2011.[14]  Jeffs allegedly admitted that he was not the Prophet around 2007.  Defendants'

involvement with the Trust ended in 2005.  In sum, Plaintiffs claims of legal malpractice and

breach of fiduciary duty are brought well outside the limitations period.

### 2.   *Fraud and Negligent Misrepresentation*

A three-year statute of limitations applies to Plaintiffs' fraud and negligent

misrepresentation claims.[15]  Plaintiffs allege that Defendants held themselves out as representing

the entire FLDS membership and that Plaintiffs reasonably relied on that representation by

donating funds for attorney's fees.  The events that form the basis for these claims occurred well

before July, 2013.  Defendants allegedly made the representations in 2008 and 2011.[16]

Donations for legal fees were allegedly collected from FLDS members and Plaintiffs as early as

2001.  Therefore, these claims are also untimely.

---

[12] *Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 14, 156 P.3d 806 (quoting *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741).

[13] Docket No. 2 ¶ 440.

[14] Docket No. 2 ¶ 117.

[15] *See* Utah Code Ann. § 78B-2-305(3) (imposing a three-year limitations period on actions "for relief on the ground of fraud"); *see also Mackay v. America's Wholesale Lender*, No. 2:11-CV-628-DN, 2012 WL 464648, at *2 (D. Utah Feb. 13, 2012) ("The statute of limitations applicable to a negligent misrepresentation claim is three years.").

[16] Docket No. 2 ¶ 117.

### 3. Civil Conspiracy and Civil RICO

Plaintiffs' claims of civil conspiracy and civil RICO are subject to four-year statutes of limitation.[17]  Plaintiffs allege that Defendants conspired with Jeffs to facilitate Jeffs' criminal behavior, and furthered the conspiracy by preparing documents for the amendment and reinstatement of the Trust.  Plaintiffs claim that Defendants benefitted from this course of action because the Trust allowed Jeffs to force Plaintiffs to pay Defendants' fees.  Plaintiffs allege that Defendants' representation of FLDS members in legal matters related to the 2008 raid on the Yearning For Zion ("YFZ") Ranch and Defendants' representation of an FLDS man accused of rape were acts in furtherance of a scheme to give Jeffs absolute control over Plaintiffs.

These claims are untimely because the underlying events occurred well before July, 2012. Plaintiffs allege that the Trust was the primary means by which Defendants' gave Jeffs power to commit crimes and extract legal fees from Plaintiffs; however, Defendants' assistance with the Trust ended in 2005.  Similarly, Defendants' representation of FLDS members in connection with the YFZ raid occurred in 2008.  Therefore, these claims are untimely.

### 4. Violation of the TVPRA

A claim under the TVPRA must be brought within either 10 years after the cause of action arose or 10 years after the victim reaches 18 years of age, if the victim was a minor at the

---

[17] *See* Utah Code. Ann. § 78B-2-307(3) (imposing a four year limitations period on actions "for relief not otherwise provided for by law"); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (adopting a four-year statute of limitations for civil RICO actions); *Manzanares v. Terry*, No. 2:14-CV-108 TS, 2014 U.S. Dist. LEXIS 159727 at *10 n.16 (D. Utah Nov. 12, 2014) (applying a four-year statute of limitations to RICO and civil conspiracy claims).

time of the alleged offense.[18]  Some of the events allegedly supporting this cause of action

occurred after July, 2006, and Defendants do not argue that this claim is time-barred.  Therefore,

this claim will not be dismissed on statute of limitations grounds.

## B.  TOLLING THE LIMITATIONS PERIOD

Although "a statute of limitations begins to run upon the happening of the last event

necessary to complete the cause of action,"[19] there are exceptions to this rule.  For example, "in

the case of a plaintiff who has not reached the age of majority or is mentally incompetent, the

statute of limitations will be tolled until the plaintiff is free from the disability."[20]  In this case,

Plaintiff May Musser turned eighteen around 2015.  Therefore, the limitations period on all

claims were tolled for Ms. Musser until she reached the age of eighteen.[21]

Plaintiffs argue that the statute of limitations should be tolled for all Plaintiffs because

they did not discover or were prevented from discovering facts supporting their claims.  Under

the discovery rule, a limitations period may be tolled "until the discovery of facts forming the

basis for the cause of action."[22]  The discovery rule only operates when there is: "(1) a statutory

tolling provision, (2) an exceptional circumstance, or (3) fraudulent concealment."[23]

---

[18] 18 U.S.C. § 1595(c).

[19] *Colosimo*, 2007 UT 25, ¶ 14, 156 P.3d 806 (quoting *Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741).

[20] *Id.* ¶ 14, 156 P.3d 806.

[21] No other named Plaintiff was a minor on July 13, 2012.  Other minor children are listed in the caption of the Complaint, but do not appear to assert any claims on their own behalf. Any such claims would fail for substantially the same reasons that Ms. Musser's claims fail.

[22] *Colosimo*, 2007 UT 25, ¶ 15, 156 P.3d 806 (quoting *Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741).

[23] *Id.* ¶ 13, 108 P.3d 806.

*1.   Statutory Tolling Provisions*

Of the claims brought by Plaintiffs, only the statute applicable to the fraud claim contains a discovery provision.  Utah Code Ann. § 78B-2-305(3) provides that "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."  Under this provision, a plaintiff is deemed to have "discovered his action when he has actual knowledge of the fraud 'or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him.'"[24]  The Utah Supreme Court has emphasized that "'[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge' and that '[a] party is required to make inquiry if his findings would prompt further investigation.'"[25]

Here, the key facts supporting the alleged fraud began in 1998.  Plaintiffs knew of Jeffs' actions and also allege that they knew of the connections between Jeffs and Defendants.  Defendants' representation of FLDS members and connection to the Trust was either known to Plaintiffs or was discoverable during the limitations period.  Defendants' representation of FLDS members in connection with custody disputes following the 2008 raid was public knowledge.  The facts known to Plaintiffs were enough to trigger a duty to inquire into potential claims against Defendants.  Plaintiffs failed to do so, and "they cannot now allege that they lacked knowledge of their claims."[26]  Therefore, Utah Code Ann. § 78B-2-305 does not toll the limitations period on Plaintiffs' fraud claim.

---

[24] *Id.* ¶ 17, 156 P.3d 806 (quoting *Baldwin v. Burton*, 850 P.2d 1188, 1196 (Utah 1993)).

[25] *Id.* (quoting *Baldwin*, 850 P.2d at 1196).

[26] *Id.* ¶ 18, 156 P.3d at 811.

2. *Exceptional Circumstances*

Equitable tolling may be appropriate "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant . . . prevented the discovery of the cause of action."[27]  This doctrine applies only if Plaintiffs make an initial showing that they "did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within [the limitations period]."[28]

Plaintiffs argue that they are "not legally sophisticated, and do not have the ability to divine the impact of unknown machinations on the part of a law firm as sophisticated as SC&M."[29]  Plaintiffs also assert that they did not and could not have discovered the facts underlying their claim against the lawyer Defendants because they lived in a community that eschewed news and information from the outside world.

While ignorance of the fact of injury may postpone the statute of limitations, ignorance of legal rights will not.[30]  Plaintiffs have not established that their membership in the FLDS Church prevented them from seeking advice about their claimed injuries.  The Court finds that Plaintiffs' association with the FLDS community is not an exceptional circumstance that makes them eligible for application of the exceptional circumstances version of the discovery rule.

---

[27] *Id.* ¶ 19, 156 P.3d at 812 (quoting *Carson*, 2005 UT 19, ¶ 25, 108 P.3d 741).

[28] *Id.* (quoting *Burkholz v. Joyce*, 972 P.2d 1235, 1237 (Utah 1998)).

[29] Docket No. 26, at 22.

[30] *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979).

*3. Fraudulent Concealment*

Plaintiffs next argue that researching potential wrongs committed by Jeffs was forbidden and that seeking legal advice would have been in vain because Plaintiffs would have been directed by FLDS leadership to Defendants, who allegedly oversaw and controlled the legal representation of FLDS members.[31]

The fraudulent concealment version of the discovery rule aims to strike a balance between the policy underlying all statutes of limitation, "namely, to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," and the policy against "allowing a defendant who has concealed his wrongdoing to profit from his concealment."[32]  In order to succeed on a fraudulent concealment theory, a plaintiff "must diligently investigate his claim."[33]  This doctrine applies when a plaintiff demonstrates either:

> (1) that the plaintiff neither knew nor reasonably should have known of the facts underlying his or her cause of action before the fixed limitations period expired; or (2) that notwithstanding the plaintiff's actual or constructive knowledge of the facts underlying his or her cause of action within the limitations period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired.[34]

Plaintiffs do not qualify for this exception.  First, Plaintiffs have not established that Defendants concealed any of the alleged wrongdoings.  Defendants' assistance with the amended and reinstated Trust was no secret.  It was known to at least some Plaintiffs and was discussed in

---

[31] Docket No. 26, at 22.

[32] *Berenda v. Langford*, 914 P.2d 45, 52 (Utah 1996) (citations and internal quotation marks omitted).

[33] *Colosimo*, 2007 UT 25, ¶ 37, 156 P.3d 806.

[34] *Id.* ¶ 38, 156 P.3d 806 (quoting *Carson*, 2005 UT ¶¶ 44, 108 P.3d 741).

a published decision by the Utah Supreme Court in 2005.  Further, Defendants' representation of FLDS members was public knowledge, and Plaintiffs knew that Defendants assisted in the FLDS Church's legal matters.  There is no indication that the provisions of the Trust were concealed. Further, there is no indication that Plaintiffs diligently investigated their claims.  Plaintiffs claim that seeking legal advice would have been futile, but no Plaintiff ever attempted to do so.

The Court finds that Plaintiffs were on notice of Defendants' potential wrongdoing and that through the exercise of due diligence, a reasonable plaintiff would have discovered the facts forming the basis of these causes of actions within the limitations periods.  Therefore, the limitations periods will not be tolled, and Plaintiffs' claims of legal malpractice, breach of fiduciary duty, fraud, negligent misrepresentation, civil conspiracy, and civil RICO are dismissed as untimely, except in the case of Plaintiff Ms. Musser.

C.  PLAINTIFF MAY MUSSER'S CLAIMS

    *1.  Legal Malpractice and Breach of Fiduciary Duty*

To succeed on a claim of legal malpractice based on negligence, a plaintiff must prove: "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages."[35]  The elements of a legal malpractice claim based on breach of fiduciary duty are substantially the same.[36]

Defendants argue that Plaintiffs' Complaint fails to allege facts supporting the existence of a duty because no attorney-client relationship was formed between Defendants and the

---

[35] *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 22, 194 P.3d 931 (quoting *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996)).

[36] *Id.* ¶ 23, 194 P.3d 931 (listing the elements of a breach of fiduciary duty claim).

individual Plaintiffs.  "The determination of whether a legal duty exists falls to the court."[37]
Utah Rule of Professional Conduct 1.13 provides that a lawyer employed or retained by an
organization represents the organization acting through its duly authorized constituents.
Although a lawyer is obligated not to disclose the information revealed by the client's
constituents or employees, "this does not mean . . . that constituents of an organizational client
are the clients of the lawyer."[38]

 Plaintiffs do not claim that an express attorney-client relationship between Ms. Musser
and Defendants was ever formed.  However, Plaintiffs argue that an implied attorney-client
relationship is adequately pleaded in the Complaint.  An implied attorney-client relationship
"exists when a person reasonably believes that the attorney represents the person's legal
interest."[39]  The person must subjectively believe that the attorney represents him or her and that
belief must be reasonable under the circumstances.[40]  In addition, the belief must be "induced by
representations or conduct of the attorney."[41]

 Ms. Musser claims that the FLDS Church withheld her paychecks in part for attorneys
fees, and that she sometimes saw wheelbarrows at the entrance of the FLDS meetinghouse to
collect money for "the lawyers," which Ms. Musser allegedly understood to include Defendants.
Plaintiffs also allege that Defendants asserted publicly that SC&M represented all residents of

---

[37] *Normandeau v. Hanson Equip., Inc*, 2009 UT 44, ¶ 18, 215 P.3d 152 (quoting *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 14, 143 P.3d 283).

[38] Utah R. Prof'l Conduct 1.13 cmt. 2; *see Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1385 (10th Cir. 1994) (finding no attorney-client relationship between a school district's attorneys and a principal who consulted the lawyers about personnel issues and acted on their advice).

[39] *Roderick v. Ricks*, 2002 UT 84, ¶ 40, 54 P.3d 1119.

[40] *Id.*

[41] *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 727 (Utah Ct. App. 1990).

the YFZ Ranch in connection with civil claims arising from a Texas raid in 2008, and that SC&M represented the Trust until 2005.

These factual allegations are not legally sufficient to adequately plead an implied attorney-client relationship.  Defendants' representation of the Trust ended in 2005 and Ms. Musser did not live on or claim any connection to the YFZ Ranch.  In addition, it is not objectively reasonable to believe that simply donating funds to a church creates an implied attorney-client relationship with that church's retained attorneys.

Plaintiffs' cite *Margulies v. Upchurch* in support of their argument that an implied attorney-client relationship existed in this case.[42]  In *Margulies*, the Utah Supreme Court found an implied attorney-client relationship where a lawyer retained by a limited partnership brought a federal action, which, if successful, would directly aid and benefit three of the entity's partners.[43] Importantly, the court only found an implied attorney-client relationship between the lawyer and the three partners who would have received a direct benefit from the lawyer's actions.  The court in *Margulies* explained that "[i]f the limited partners stand to gain nothing more from the attorney's representation of the limited partnership than the incidental gain which will accrue to them as partners, and not in their individual capacities, no attorney-client relationship should be implied."[44]

Here, Plaintiffs do not specify any action taken by Defendants that would directly involve Ms. Musser's individual interests.  Defendants' actions may have affected Ms. Musser in the same way they affected all members of the FLDS Church, but this incidental effect is not

---

[42] 696 P.2d 1195 (Utah 1985).

[43] *Id.* at 1200.

[44] *Id.* at 1200–01.

sufficient to support an implied attorney-client relationship.  Considering the totality of the circumstances, Plaintiffs have failed to plead facts supporting either a subjective or objectively reasonable belief that Defendants' represented Ms. Musser as an individual.  Therefore, Ms. Musser's claims of legal malpractice and breach of fiduciary duty are dismissed as inadequately pleaded.

### 2.   *Fraud and Negligent Misrepresentation*

Generally, "to prevail in an action for negligent misrepresentation, plaintiffs must identify a 'representor [who] makes an affirmative assertion which is false.'"[45]  "[A]n omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose."[46]  "Thus, a duty to disclose is a necessary element of the tort of negligent misrepresentation;" without it, "there can be no negligence as a matter of law."[47]  Similarly, to prevail on a claim of fraudulent nondisclosure, a plaintiff must establish a legal duty to disclose.[48]

The Complaint alleges that Defendants had a duty to disclose information about Jeffs to Plaintiffs, and that this duty arose from the Utah Rules of Professional Conduct, including Rule 1.4.  However, the duty of communication is only owed to those with whom the lawyer has formed an express or implied attorney-client relationship.  As discussed above, there is no factual support for either an express or an implied attorney-client relationship between Defendants and

---

[45] *Smith v. Frandsen*, 2004 UT 55, ¶ 10, 94 P.3d 919 (quoting *Ellis v. Hale*, 373 P.2d 382, 385 (Utah 1962)).

[46] *Id.* ¶ 11, 94 P.3d 919.

[47] *Id.* (quoting *Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892).

[48] *Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 20, 246 P.3d 131.

Ms. Musser.  The elements of these claims have not been adequately pleaded; therefore, the claims are dismissed.

    *3.  Civil RICO*

    The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.[49]  "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any "act which is indictable" under federal law and specifically includes mail fraud, wire fraud and racketeering.  These underlying acts are "referred to as predicate acts, because they form the basis for liability under RICO."[50]  A "pattern" requires at least two acts of racketeering activity within a 10-year period.[51]

    Plaintiffs allege that Defendants participated in the conduct of an enterprise (the FLDS Church and the Trust) through a pattern of racketeering activity by providing ongoing advice and by enforcing the UEP Trust, which was a source of Jeffs' power.  Plaintiffs allege that Defendants continued to provide legal advice and services to Jeffs despite knowing that Jeffs had admitted that he was a fraud, and despite being aware of rapes, kidnapping, extortion, and other racketeering activities being perpetrated by Jeffs.

    Plaintiffs' allegations regarding Defendants' participation in the operation or management of a RICO enterprise are conclusory and lack factual support.  It is not sufficient to allege that Defendants used "legalities and artifices incidental to their role as lawyers" to further

---

    [49] 18 U.S.C. § 1962(a)–(c).

    [50] *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (internal quotation marks omitted).

    [51] 18 U.S.C.S. § 1961(5); *see also  H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989).

the goals of the FLDS Church.  Typical legal services do not rise to the level of control required for RICO liability.[52]  There are not sufficient factual allegations that Defendants directed any part of an alleged RICO enterprise.  Plaintiffs' statements regarding illicit "legal frameworks" created by Plaintiffs do not reference any specific transactions or Trust provisions, and are therefore conclusory.  Therefore, Plaintiffs' claim under 18 U.S.C. § 1962(c) is dismissed as inadequately pleaded.

### 4.  Civil Conspiracy

A claim of civil conspiracy has five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[53]  "The claim of civil conspiracy 'require[s], as one of [its] essential elements, an underlying tort.'"[54]  As discussed above, none of the torts alleged by Plaintiffs have been adequately pleaded.  Therefore, "dismissal of their civil conspiracy claim 'is appropriate.'"[55]

---

[52] *See Goren v. New Vision Intl*, 156 F.3d 721, 728 (7th Cir. 1998) (finding that providing professional services does not result in RICO liability); *Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir. 1993) (holding that attorney who simply provided legal services to corporation did not participate in operation or management of enterprise regardless of whether he performed those services "well or poorly, properly or improperly"); *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1205 (D. Utah 2007) (finding no RICO liability where "plaintiffs have failed to show that the Florida Fund did anything other than provide its regular services"); *cf. Bancoklahoma Mortg. Corp.*, 194 F.3d at 1101 (finding no RICO liability where title companies "did nothing more than provide their regular services").

[53] *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024 (quoting *Peterson v. Delta Air Lines, Inc.*, 2002 UT App 56, ¶ 12, 42 P.3d 1253, 1257).

[54] *Id.* (quoting *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971 (alteration in original)).

[55] *Id.* (quoting *Puttuck*, 2008 UT App 362, ¶ 21, 199 P.3d 971.

## D.  AIDING AND ABETTING THE COMMISSION OF FELONIES

In their seventh cause of action, Plaintiffs claim that Defendants are civilly liable for aiding and abetting the commission of the felonies.  However, the Supreme Court has refused to rely on 18 U.S.C. § 2 "as the basis for recognizing a private aiding and abetting right of action."[56]  Counsel for Plaintiffs has stipulated to the dismissal of this cause of action. Therefore, this claim is dismissed.

## E.  VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT ("TVPRA")

In the sixth cause of action, Plaintiffs allege that Parker and SC&M helped Jeffs provide and/or obtain labor or services in violation of 18 U.S.C. § 1589, and that Parker and SC&M benefitted from that labor.  Section 1589 provides two theories of liability regarding forced labor. In addition, 18 U.S.C. § 1583 forbids kidnap and enslavement.

### 1.  Kidnapping or enslaving under 18 U.S.C. § 1583

The Complaint alleges that Jeffs caused children to be kidnapped and held at the YFZ compound, which was later raided.  However, the Complaint makes no connection between Defendants and the alleged kidnapping aside from the tenuous connection that the YFZ camp was on "Trust Lands" and that Defendants helped amend and reinstate the Trust.  This connection does not approach adequately pleading that Defendants "kidnap[ped] or carrie[d] away another person" or enticed a person into slavery, or obstructed enforcement of 18 U.S.C.

---

[56] *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

§ 1583.[57]  The fact that Parker may have represented the interests of those who lived at the YFZ Ranch following the raid does not support Plaintiffs' allegations on this point.[58]  Therefore, any claim under Section 1583 is dismissed.[59]

> 2.  *Providing or obtaining forced labor under 18 U.S.C. § 1589(a)*

Section 1589(a) makes it unlawful to "knowingly provide[] or obtain[] the labor or services of a person" using "force, threats of serious harm to that person," "the abuse or threatened abuse of law or legal process," or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person . . . would suffer serious harm . . . ."[60]

> a.  *Force, serious harm, or a scheme, plan, or pattern under 18 U.S.C. § 1589(a)(1),(2), or (4)*

Plaintiffs allege that Jeffs used force, threats of force, or threats of serious harm in order to extract forced labor or sexual servitude from FLDS members.  Plaintiffs do not allege, however, that Defendants Parker and SC&M did so.  Plaintiffs suggest that Defendants are nonetheless liable because Defendants drafted the Trust documents that made Jeffs' revelations guiding tenets in how the Trust was managed.  Plaintiffs' theory would make attorneys

---

[57] *See, e.g., United States v. Kozminski*, 487 U.S. 931, 950 (1988) (finding that § 1583's references to slavery and involuntary servitude is not applicable to an individual who "asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful").

[58] *See* Utah R. Prof'l Conduct R. 1.2(b) ("A lawyer's representation of a client . . . does not constitute an endorsement of the client's political, economic, social or moral views or activities.").

[59] Plaintiffs did not defend their claim under 18 U.S.C. § 1583 in their Response in Opposition to the Motion to Dismiss.

[60] 18 U.S.C. § 1589(a).

vicariously liable for the acts of a client in the mismanagement of a trust simply because the attorneys prepared documents giving the client discretion in how the trust was managed.  This theory is not sufficient to state a claim under 18 U.S.C. § 1589(a).

Plaintiffs' also claim that Defendants engaged in a scheme, plan, or pattern intended to cause the FLDS community to believe that they would suffer serious harm or physical restraint if they did not perform forced labor or services.  The only actions alleged by Plaintiffs are that Defendants helped with Trust documents and that Parker represented an FLDS man facing a prosecution for rape.  This is insufficient to support a claim of a "scheme, plan or pattern" designed to cause the beliefs alleged by Plaintiffs.  In sum, Plaintiffs have not pleaded sufficient facts to support a TVPRA claim based on subsections (1), (2), or (4) of Section 1589(a).

b. *Abuse or threatened abuse of law or legal process under 18 U.S.C. § 1589(a)(3)*

The TVPRA defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure" on the victim to take, or refrain from taking, some action.[61]

Plaintiffs refer to the amended Trust as an unlawful framework.  Plaintiffs cite *Snow, Christensen & Martineau v. Lindberg*, in support of this assertion.[62]  In *Lindberg*, the Utah Supreme Court explained that the 1998 amendment and reinstatement was a response to a decision by the Utah Supreme Court that the Trust was not charitable because it benefitted

---

[61] 18 U.S.C. § 1589(c)(1).

[62] 2013 UT 15, 299 P.3d 1058.

specific individuals.[63]  Following a lawsuit against the Trust and Jeffs in 2004, a district court

suspended the trustees and reformed the Trust using the doctrine of cy pres.  While the court

reformed the Trust to advance its charitable purpose, the court could not reform the Trust to

advance its religious purpose because the court was prohibited by the First Amendment to the

United States Constitution from resolving property disputes on the basis of religious doctrines,

and because it could not advance certain FLDS doctrines such as polygamy, bigamy, or sexual

activity between adults and minors because those activities were illegal.[64]

 Plaintiffs theorize that because one of the reinstated Trust's purposes was to further

FLDS doctrines, and because some FLDS doctrines are illegal, the drafters of the Trust furthered

illegal acts.  This theory is not sufficient to support Plaintiffs' claim that Defendants abused a

legal process under 18 U.S.C. § 1589(a)(3).  The Trust's provisions and the authority it gives are

centered on the distribution of property in a way that would meet the just wants and needs of the

FLDS community.  Plaintiffs cite no authority for the proposition that allowing a client to

distribute trust property on the basis of religious principles is an abuse of a legal process.

Nothing from the Trust or the facts alleged indicate that Defendants drafted Trust

documents with the intent to make FLDS members believe that they would suffer harm if they

did not perform forced labor.  Therefore, Plaintiffs fail to adequately plead facts that would

support a TVPRA claim based on subsection (3) of Section 1589(a).

---

[63] *Id.* ¶ 4.

[64] *Id.* n.2.

### 3.   *Knowingly benefitting from forced labor under 18 U.S.C. § 1589(b)*

Section 1589(b) makes it a punishable offense to knowingly benefit, "financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)," which have been discussed above.[65]   Plaintiffs allege that Defendants reconfigured the Trust to permit Jeffs to force FLDS members to pay Defendants' fees, that Jeffs ordered minors and adults to work for no pay, and that that Parker benefitted from one or more FLDS "work projects" where underage workers were allegedly ordered to remodel Parker's home in exchange for legal services.[66]

Several Plaintiffs allege that FLDS employers withheld all or part of their paychecks in order to pay legal fees.  For example, Plaintiff May Musser claimed that she was required to perform heavy manual labor as a child, and then was required to work at the Hilldale Clinic at the age of thirteen under her older sister's name.  Her paychecks were made payable to her older sister and were surrendered to the FLDS Church.  Plaintiff Richard Rohbok claimed that he sometimes worked 24 out of every 32 hours for an FLDS-owned concrete company.  The company allegedly withheld money involuntarily from Mr. Rohbok's paychecks and never paid Mr. Rohbok overtime.  Eventually, the FLDS-owned company withheld Mr. Rohbok's entire paycheck for what he understood to be attorney's fees, and then advised him to take out a title loan to make ends meet.  Mr. Rohbok's wife turned to appetite suppressants to better feed their children, and was eventually hospitalized for malnutrition.  Other Plaintiffs allege that they were expected to donate $1,000 each month for legal fees, and one Plaintiff alleged that when he

---

[65] 18 U.S.C. 1589(b).

[66] Docket No. 2 ¶ 21.

failed to make the donation, the FLDS Church withheld feed for his livestock.  Plaintiffs claim that Defendants knew of and approved the circumstances under which attorney's fees were being collected.

Regardless of whether Defendants knowingly benefitted from alleged forced labor, Plaintiffs have failed to adequately plead that Defendants "*participat[ed]* in a venture" to provide or obtain that labor.  The term "venture" is defined as "an undertaking that involves risk," and is typically associated with "a speculative commercial enterprise."[67]  Neither "participation" nor "venture" has been defined in the context of 18 U.S.C. § 1589(b).  In the RICO context, however, courts have rejected the idea that providing professional services equates to "participating" in an enterprise.[68]  In RICO cases, a party is deemed to have participated only if they took part in the operation and management of the enterprise.[69]  This requires more than associating with or assisting an enterprise, even when assistance is given with the knowledge of an enterprise's illicit nature.[70]

Here, Defendants represented the FLDS Church, assisted in the amendment of the Trust, and represented some FLDS members.  Defendants' alleged actions do not equate to

---

[67] Black's Law Dictionary (10th ed. 2014) (defining venture as "[a]n undertaking that involves risk; esp., a speculative commercial enterprise").

[68] *Goren*, 156 F.3d at 728.

[69] *Reves v. Ernst & Young*, 507 U.S. 170, 185–86 (1993).

[70] *Goren*, 156 F.3d at 728; *see also Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (holding that attorneys who prepared allegedly false opinion letters and informational memoranda regarding a music recording leasing program had not participated in operation or management of enterprise); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J. 1993) (finding that preparing documents for the purchase and sale of real estate, preparing and filing legal documents, and serving as agent for receipt of process were not enough for RICO "participation" because there was no evidence that the attorney was directing the entities he represented).

participation in Jeffs' alleged venture to profit from forced labor.  Without some indication that Defendants took some action to operate or manage the venture, the fact that Jeffs allegedly misused Trust property as leverage to compel forced labor is not enough to make Defendants liable under Section 1589(b).  Therefore, even if the money for SC&M's fees was obtained by Jeffs in a way that violated Section 1589(a), Plaintiffs have inadequately pleaded that Parker and SC&M participated in that venture, and this claim is therefore dismissed.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 11) is GRANTED.

DATED this 11th day of January, 2017.

BY THE COURT:

Ted Stewart
United States District Judge