IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALYSSA BISTLINE, et al.,<br><br>              Plaintiffs,<br>v.<br><br>SNOW CHRISTENSEN & MARTINEAU, P.C., et al.,<br><br>              Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:16-cv-788 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Dustin B. Pead |

This matter is referred to the undersigned from Judge Ted Stewart based upon 28 U.S.C. § 636(b)(1)(a). (ECF No. 57.) Pending before the court are Plaintiffs' Short Form Discovery Motion (ECF No. 79.), Defendants' Motion seeking phased discovery (ECF No. 81.) and a Motion for Hearing where all parties seek a hearing before the court regarding these discovery motions. (ECF No. 82.) As set forth below the court will deny Plaintiffs' Short Form Discovery Motion, request additional briefing on Defendants' Motion, and deny the Motion for Hearing without prejudice.[1]

## DISCUSSION

Plaintiffs are former members of the Warren Jeffs' Fundamentalist Church of Jesus Christ of Latter-Day Saints (FLDS Church), beneficiaries of a trust known as the United Effort Plan Trust (UEP Trust) and clients of Defendants. *See* Amend. Compl. p. 1, ECF No. 63. Briefly Plaintiffs allege, *inter alia*, that Defendants engaged in an illegal scheme and plan to defraud them, commit illegal activities against them and caused physical injuries and sicknesses.

---

[1] Pursuant to DUCivR 7-1(f) the court elects to decide the matter on the basis of the written memoranda submitted by the parties.

The scope of this case and discovery is potentially very large. For example, Plaintiffs' initial disclosures originally identified 520 witnesses that they intended to use in this case. The court already weighed in on that issue establishing some order and direction for the parties. (ECF No. 72.) As noted in that order, there are limits to discovery. Rule 26(b)(1) establishes the general scope of permissible discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> In analyzing Rule 26 and the scope of discovery, the Tenth Circuit has opined:
>
> [W]hen a party objects that discovery goes beyond that relevant to the claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. This good cause standard is intended to be flexible. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. [T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188–89 (10th Cir. 2009) (citations omitted) (internal quotation marks omitted).

Although the above standard appears relatively straightforward, the parties disagree as to the scope of remaining discovery in this case, and how discovery should proceed, based on their respective interpretations of the Tenth Circuit's decision. In a detailed opinion the Tenth Circuit reinstated this action on remand and circumscribed the confines of this case. In conclusion the Tenth Circuit provided:

In sum, the status of plaintiffs' claims moving forward are as follows. For the legal malpractice and breach of fiduciary duty claims, the following fifteen plaintiffs pled facts sufficient to survive a motion to dismiss: Sarah Allred, Helen Barlow, Lawrence Barlow, Nolan Barlow, Vergel Barlow, Holly Bistline, Jason Black, Susan Broadbent, Marvin Cooke, Steven Dockstader, Thomas Jeffs, Carole Jessop, May Musser, Amy Nielson, and Alicia Rohbuck. A factual question remains for each of these plaintiffs regarding whether (and how long) equitable tolling applies to their limitations periods, and whether individual implied attorney-client relationships existed. On remand the district court will also have to address the remaining elements of their claims. Furthermore, because these underlying torts are no longer dismissed for failure to state a claim, the court on remand must determine with respect to these fifteen plaintiffs whether the elements for civil conspiracy have been sufficiently pled.

Twelve plaintiffs pled facts sufficient to survive dismissal of their fraudulent and negligent misrepresentation claims: all of the aforementioned plaintiffs except Lawrence Barlow, Nolan Barlow, and Jason Black. Once again, for the plaintiffs whose claims survive there is a factual question regarding when they discovered their claims, thereby starting the running of the statutory period, and whether an implied attorney-client relationship existed. The remaining elements of their claims must also be addressed on remand.

The civil RICO claims have been forfeited as inadequately presented in plaintiffs' opening brief. With respect to the TVPRA claims, nine plaintiffs have pled facts sufficient to pass muster under the plausibility standard and thus survive dismissal: Susan Broadbent, Steven Dockstader, Thomas Jeffs, Carole Jessop, Briell Decker, May Musser, Ruby Jessop, Janetta Jessop, and Gina Rohbock.

*Bistline v. Parker*, 918 F.3d 849, 889 (10th Cir. 2019).

With this backdrop the court turns to the motions.

I.  **Plaintiffs' Short-Form Motion to Compel Discovery and for Sanctions**

In October 2019 Plaintiffs propounded their first set of written discovery requests. Plaintiffs assert Defendants only responded in part. "Although the Requests contained 19 interrogatories, 21 requests for production of documents and 18 requests for admissions, the Response provided no documents other than a certificate of insurance coverage. Other than in response to interrogatory nos. 4, 5, 6, 10 and 11, request for production no. 19, and request for admission no. 4, no information responsive to our requests was produced." Mtn p. 2. Defendants

3

later "supplied copies of files related to two legal matters involving named plaintiffs … and the relevant policy of insurance." *Id.* at p. 3. Such responses, according to Plaintiffs, are "grossly insufficient", including the fact that Defendants failed to serve a privilege log as required under Federal Rule 26(b)(5)(A)(ii). Plaintiffs seek fees based on this noncompliance.

In response, Defendants argue Plaintiffs seek "reams of irrelevant—and clearly privileged—information." Defendants assert that Plaintiffs seek "every page of every legal file ever created in connection with [Defendant's] decades-long representation of the FLDS Church, the UEP Trust, and individual FLDS members."

The court has carefully reviewed Plaintiffs' discovery requests and agrees that many of them are overbroad and seek what appears to be privileged information. On the entirety of the record, the court finds there are three general problems that undermine many of Plaintiffs' discovery requests (1) an unspecified time frame; (2) seeking privileged information; and (3) seeking irrelevant information.

    **(i)**    **The lack of a specific time frame**

In its decision, the Tenth Circuit stated "Plaintiffs allege that the legal framework defendants created to facilitate Mr. Jeffs' crimes took shape through the 1998 amendment and reinstatement of the United Effort Plan Trust ("Reinstated Trust")." *Bistline v. Parker*, 918 F.3d 849, 855 (citing *Snow, Christensen & Martineau v. Lindberg*, 299 P.3d 1058, 1061 (Utah 2013)). The complaint asserts that under Rulon Jeffs' leadership the FLDS church did not practice the atrocities defining Plaintiffs' claims. In Rulon Jeffs' declining years however, his son Warren "began to assume the mantle of authority and control." Compl. at 27. In early August 1998, Rulon Jeffs suffered a massive stroke that "left him largely impaired and paved the way for [Warren] Jeffs to eventually assume complete and absolute control of the FLDS." *Id.* at 28.

Although the Reinstated Trust was nominally executed by Rulon Jeffs, "[his] signature on the Trust instrument ... was placed with physical assistance and guidance of others holding [his] pen hand, at the direction of [Warren Jeffs]." *Id*. at 32–33. Plaintiffs' Complaint focuses on this change of leadership and how the Reinstated Trust enabled the alleged atrocities.

As a starting point, therefore, any discovery should be limited in time by Plaintiffs own allegations surrounding the Reinstated Trust. Thus Interrogatory No. 1 that states "List each matter, claim or file established or opened at SC&M in relation to any legal services relating to the UEP, Jeffs or any FLDS entity, leader or member, ...." covers a time frame far too broad based on Plaintiffs' own allegations. Likewise, Interrogatory No. 10 states, "Identify each instance of SC&M arguing to any court, or representing to any court, that it had undertaken to act in any capacity to protect the rights of individual members of the FLDS Church or the UEP Trust." Both requests fail to define a time frame for the requested discovery. In contrast to the foregoing, Interrogatory No. 4 adopts a time limitation as it provides "Describe the organizational structure of SC&M from 1998 through the present, ...." Perhaps there is discoverable information prior to 1998, but requests that seek "each matter" or "each instance" without some time limitation are not appropriate. The court finds that many of Plaintiffs' requests are lacking an appropriate time limitation and therefore must be redrafted in a narrower manner.

   **(ii) Seeking privileged information**

The second category of problematic discovery requests cross the line, seeking privileged information. For example, Interrogatory No. 2 requests "the amount of fees or services received each year by SC&M for or in relation to work or legal services of any kind in connection with any FLDS entity, leader or member." Interrogatory No. 7 provides, "State whether SC&M has

5

ever disclosed to any insurer, broker, insurance agency or risk retention group, prior to notice of the potential filing of the instant litigation, the potential that SC&M may face civil liability for its role, acts or omissions of any kind in relation to any legal services provided in connection with any FLDS leader, member or entity." And, Request for Production No. 1 seeks, "a complete copy of each legal file in the possession, custody or control of defendants that pertains in any way to legal action, advice or representation involving the UEP, the FLDSA, any FLDS member or leader, any FLDS entity and/or the Plaintiffs herein or their legal interests." Each of these requests, in the court's view, cross the line and enter into privileged territory. "Parties may obtain discovery regarding any nonprivileged matter …." Fed. R. Civ. P. 26(b)(1). The court fails to see how a "complete copy of each legal file" or information about representation provided for insurance coverage is not privileged.

Rule 26(b)(5)(A)(ii) instructs a party claiming privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The court will require Defendants to file a privilege log as to those items it believes are privileged. Once the privilege log is provided to Plaintiffs, the parties are to meet and confer, and seek to resolve any disagreements over privilege issues.

**(iii)   Relevance**

This case is still in the discovery phase so the relevance of discovery is broadly construed. *See Gomez v. Martin Marrietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995) (agreeing with the appellant that the "scope of discovery under the federal rules is broad"); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M.2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all

6

potentially relevant information."). Yet, discovery is not without limits. As set forth by Rule 26(b) discovery is available for "any nonprivilged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). Tellingly, over the years, there has been a continual need to reduce the amount of discovery in litigation due to problems with "over-discovery," skyrocketing costs, and the explosion of information arising from the advent of e-discovery. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.[2] In 2015 the Federal Rules were amended to help address this need, and proportionality considerations were given a more prominent position, although such considerations have been at the core of changes adopted as far back as 1983. *See id.* Chief Justice Roberts' 2015 Year–End Report on the Federal Judiciary indicates that the addition of proportionality to rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." Chief Justice John Roberts, 2015 Year–End Report available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx. The Chief Justice states that the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and is designed to impose "careful and realistic assessment of actual need." *Id.* at 7. In practical terms, such assessments may, require "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *State Farm Mutal Auto. Ins. Co. v. Fayda*, 2015 WL 7871037 at *2 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted).

---

[2] The note further states, "The burden or expense of proposed discovery should be determined in a realistic way. This includes the burden or expense of producing electronically stored information. Computer-based methods of searching such information continue to develop, particularly for cases involving large volumes of electronically stored information. Courts and parties should be willing to consider the opportunities for reducing the burden or expense of discovery as reliable means of searching electronically stored information become available."

Applying these tenets here, to Plaintiffs' discovery requests, leads to serious concerns. The Tenth Circuit specifically set forth which causes of action apply to certain plaintiffs.

> For the legal malpractice and breach of fiduciary duty claims, the following fifteen plaintiffs pled facts sufficient to survive a motion to dismiss: Sarah Allred, Helen Barlow, Lawrence Barlow, Nolan Barlow, Vergel Barlow, Holly Bistline, Jason Black, Susan Broadbent, Marvin Cooke, Steven Dockstader, Thomas Jeffs, Carole Jessop, May Musser, Amy Nielson, and Alicia Rohbuck.

*Bistline*, 918 F.2d at 889. The Tenth Circuit then set forth what remains.

> A factual question remains for each of these plaintiffs regarding whether (and how long) equitable tolling applies to their limitations periods, and whether individual implied attorney-client relationships existed. On remand the district court will also have to address the remaining elements of their claims.

*Id.* The Tenth Circuit followed this same procedure for other causes of action. For example, "Twelve plaintiffs pled facts sufficient to survive dismissal of their fraudulent and negligent misrepresentation claims: all of the aforementioned plaintiffs except Lawrence Barlow, Nolan Barlow, and Jason Black." *Id.* Accordingly, "[o]nce again, for the plaintiffs whose claims survive there is a factual question regarding when they discovered their claims, thereby starting the running of the statutory period, and whether an implied attorney-client relationship existed." *Id.*

The Tenth Circuit's decision created some boundaries in relation to relevance and proportionality for the issues in this case. Thus discovery that seeks information for all individuals ever represented by Defendant, is irrelevant and lacks a "careful and realistic assessment of actual need."

### (iv) The court will deny Plaintiffs' motion

For the foregoing reasons, the court will deny Plaintiffs' motion and order Plaintiffs to redraft their discovery requests in harmony with the aforementioned principles, including limiting the time frame and subject of such discovery. Once that is done Defendants will be

required to file a privilege log for any items Defendants consider privileged. Then, the parties are required to have a meaningful meet and confer regarding any outstanding discovery requests.

> II. **Defendants' Motion for Phased Discovery**

Defendants seek phased discovery asserting the Tenth Circuit's decision supports this approach. On remand, the Tenth Circuit ruled that, this court "should determine whether individual Plaintiffs (1) had implied attorney-client relationships with SCM, and (2) may invoke equitable tolling to survive under the statues of limitations." Mtn p. 1, ECF No. 81. According to Defendants, these two issues determine whether 69 of the 78 total claims continue toward trial. Defendants offer three arguments in support of their motion: (1) phased discovery will "potentially eliminate the burden and expense of deposing hundreds of witnesses"; (2) phased discovery will assist in resolving the parties' discovery dispute; and (3) phased discovery is unlikely to increase discovery costs. Essentially once phase I discovery is complete, Defendants will move for summary judgment on a number of claims, and then the court, and the parties, can turn their attention to any remaining claims including those that survive summary judgment. Plaintiffs oppose bifurcation of discovery arguing it is "grossly inequitable", prejudicial, and that Utah federal courts generally disfavor bifurcation of discovery. Plaintiffs cite to *Zachwieja v. American Family Mut. Ins. Co.*, 2009 WL 819371 (D.Utah Mar. 27, 2009) and *Gadd v. South Jordan City*, 2018 WL 6441763 (D.Utah Dec. 7, 2018).

While "[b]ifurcation under Rule 42 is not 'the norm or even a common occurrence'" a case such as this, may be appropriate for bifurcation of discovery given its scale and the guidance already received from the Tenth Circuit. *Gadd*, 2018 WL 6441763, at *1 (quoting *Bonham v. GEICO Cas. Co.*, 2016 WL 26513, at *1 (D. Colo. Jan. 4, 2016)) (internal citation

and quotations omitted). The court will therefore order further briefing on this issue to help determine the utility of it in this particular case.

### III.     The Motion for Hearing

Plaintiffs move the court for a telephonic hearing on discovery and Defendants support this request. The court denies this motion as of now. Once Plaintiffs redraft their discovery requests, ensuring they are more narrowly tailored as the court discussed above, and the parties meet and confer regarding those requests, the court will consider holding a telephonic hearing to address any remaining issues.

## ORDER

For the reasons set forth above,

Plaintiffs' Short-Form Motion to Compel is DENIED. Plaintiffs are to redraft their discovery requests and may bring a motion, if necessary, to compel production of the narrowly tailored requests once Defendants have an opportunity to respond. (ECF No. 79.)

Defendants are ordered to provide a privilege log responding to Plaintiffs' revised discovery requests. And then, the parties are to meet and confer regarding any issues of privilege before any further discovery motions are filed.

Defendants' Motion for Phased Discovery is taken under advisement pending further briefing by the parties. (ECF No. 81.) Such briefing is to follow the length requirements set forth in Local Rule 7-1(a)(3)(C), 7-1(b)(2)(C), and the filing times in 7-1(b)(3)(C).

The Motion for Hearing is DENIED at this time. (ECF No. 82.)

IT IS SO ORDERED.

DATED this 31 July 2020.

_____
Dustin B. Pead
United States Magistrate Judge